PJG Consent SSA (Rev 09/10/21)                                                                 Rebekah Rogers White

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rebekah Rogers White, | ) | C/A No. 0:21-00088-PJG |
| | ) | |
| Plaintiff, | ) | **ORDER ON PLAINTIFF'S APPEAL** |
| | ) | **FROM THE SOCIAL SECURITY** |
| v. | ) | **ADMINISTRATION'S DENIAL OF** |
| | ) | **SOCIAL SECURITY BENEFITS** |
| Kilolo Kijakazi, Acting Commissioner of the | ) | |
| Social Security Administration,[1] | ) | ☐ Affirmed |
| | ) | ☒ Reversed and Remanded |
| Defendant. | ) | |
| | ) | |

      This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying the plaintiff's claims for social security benefits.

**Part I—Plaintiff seeks:**

☐      Supplemental Security Income ("SSI"): Plaintiff's age at filing: __

☒      Disability Insurance Benefits ("DIB"): Date last insured: December 31, 2023

☐      Other:

Application date: January 15, 2019

Plaintiff's Year of Birth: 1981

Plaintiff's alleged onset date: October 10, 2018

**Part II—Social Security Disability Generally**

      Under 42 U.S.C. § 423(d)(1)(A), (d)(5), and/or 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a) and/or § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations generally require the Administrative Law Judge ("ALJ") to consider five issues in sequence, as outlined below. 20 C.F.R. § 404.1502(a)(4) and/or § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

      A claimant has the initial burden of showing that he/she is unable to return to past relevant work because of his/her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the named defendant because she recently became the Acting Commissioner of Social Security.

_____

capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A) and/or § 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## Part III—Administrative Proceedings

Date of ALJ Decision:  <u>August 14, 2020</u>

In applying the requisite five-step sequential process, the ALJ found:

Step 1:                 Plaintiff was engaged in substantial gainful activity during the relevant time period:
☐  Yes   ☒  No

Step 2:                 ☒  Plaintiff has the following severe impairments:

[D]epression, a bipolar disorder, cervical spine degeneration, a labral tear, and substance abuse (20 CFR 404.1520(c)).

☐  Plaintiff does not have a severe impairment.

Step 3:                 ☒   Plaintiff's impairment(s) does/do not meet or medically equal a Listing.  20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:                 Plaintiff's Residual Functional Capacity is as follows:

[T]he claimant has the residual functional capacity to perform light work (described as requiring lifting and carrying 20 pounds occasionally and 10 pounds frequently as well as an ability to stand, sit, and walk each for 6 hours in an 8-hour workday) with frequent reaching.  The claimant is also limited to work involving the following:  Dictionary of Occupational Titles Mental reasoning level 2; application of commonsense understanding to carry out detailed, but involved written or oral instructions; and dealing with problems involving a few concrete variables in or from standardized situations.

☐  Plaintiff could return to his/her past relevant work.

Step 5:                 ☐   Plaintiff could not return to his/her past relevant work, but using the Medical-Vocational Guidelines ("Grids") as a framework supports a finding that Plaintiff is not disabled.  20 C.F.R. Pt. 404, Subpt. P, App'x 2.

☒   Plaintiff could not return to his/her past relevant work, but there are jobs in the national economy that Plaintiff can perform, as follows:

[A]n office[] helper (DOT# 239.567-010 with approximately 185,000 jobs in the national economy); an inspector/hand packager (DOT# 559.687-074 with approximately 110,000 jobs in the national economy); and an inspector (DOT# 727.687-062 with approximately 121,000 jobs in the national economy).  The vocational expert described three named jobs as light work with SVP of 2.

Date of Appeals Council decision:  <u>November 20, 2020</u>

## Part IV—Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits.  However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were

reached through application of the correct legal standard." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>see</u> <u>also</u> 42 U.S.C. § 405(g); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied.  <u>See</u> <u>Brown v. Comm'r Soc. Sec. Admin.</u>, 873 F.3d 251, 267 (4th Cir. 2017); <u>Myers v. Califano</u>, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig</u>, 76 F.3d at 589; <u>see</u> <u>also</u> <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019); <u>Pearson v. Colvin</u>, 810 F.3d 204, 207 (4th Cir. 2015).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." <u>Biestek</u>, 139 S. Ct. at 1154 (citation omitted).  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Craig</u>, 76 F.3d at 589; <u>see</u> <u>also</u> <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012).  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  <u>Blalock</u>, 483 F.2d at 775.

## Part V—Issues for Judicial Review

The ALJ committed reversible error in failing to consider the longitudinal record as a whole.

(Pl.'s Br. at 4, ECF No. 16 at 4.)

## Oral Argument:

☐ **Held on** _____.

☒ **Not necessary for disposition.**

## Summary of Reasons

### A.    Mental Impairments

Plaintiff argues that the ALJ erred by failing to consider records suggesting that Plaintiff suffered from greater mental limitations and by failing to properly assess the opinion evidence from Dr. Teresa Brown.  A claimant's residual functional capacity is "the most [a claimant] can still do despite [her] limitations" and is determined by assessing all of the relevant evidence in the case record.  20 C.F.R. § 404.1545(a)(1).  In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity.  Further, "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite

contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original); see also Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016).

Additionally, the United States Court of Appeals for the Fourth Circuit has repeatedly stated that "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)); see also Arakas v. Comm'r, 983 F.3d 83, 98 (4th Cir. 2020). Moreover, an ALJ continues to have an obligation to "include a narrative discussion describing how the evidence supports each conclusion." Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p. Similarly, remand may be appropriate when the courts are left to guess at how the ALJ arrived at the conclusions and meaningful review is frustrated. Mascio, 780 F.3d at 636-37. The ALJ must "build an accurate and logical bridge from the evidence to his conclusions." Monroe, 826 F.3d at 189.

Plaintiff argues that in evaluating her mental impairments the ALJ failed to consider all of the evidence relating to Plaintiff's hospitalizations, suicide attempts, and chronic cutting of her arms with a kitchen knife. Specifically, the Plaintiff argues that although the ALJ appears to have considered Plaintiff's hospitalization from February 17, 2011 to March 8, 2011 for substance abuse and dependence (Tr. 22), the ALJ failed to consider Plaintiff's hospitalizations for suicide attempt or ideation on July 18, 2019 (Tr. 764-95) and in May 2019 (Tr. 667-81). Plaintiff also argues that although the ALJ mentioned that Plaintiff "started cutting herself again due to relationship issues"

(Tr. 22), the ALJ failed to acknowledge several record references to Plaintiff's self-harm by cutting.  (See Tr. 667 ("Mother of the patient reported that she tried to cut herself on the neck and she does have visible scratching on the right side."); Tr. 790 (Plaintiff "has a history of **suicidal** gestures including superficial cuts to her outer forearms."); Tr. 799 ("Pt presents very upset and crying.  Did cut herself earlier today."  "Positive for dysphoric mood and self-injury."); Tr. 968 ("[C]ame for med check, well groomed with make up and jewel[ry], still c/o 'a lot of anxiety', had self harming by cutting her arm last month when she was frustrated by conflict with her son, denied SI/HI.").  The Commissioner responds by arguing that even if the ALJ erred in failing to mention two of Plaintiff's hospitalizations, they were brief and were related in significant part to Plaintiff's alcohol usage.  The Commissioner contends that the ALJ considered Plaintiff's impairments of depression and substance abuse and, therefore, failing to specifically mention these hospitalizations was not error.  The Commissioner points out that the ALJ acknowledged Plaintiff's testimony regarding suicidal thoughts and a recent March 2020 mental status examination indicating a denial of suicidal ideation.  Finally, the Commissioner argues that the ALJ mentioned Plaintiff's cutting behavior in summarizing Plaintiff's testimony by stating that "Plaintiff cuts herself when emotionally overwhelmed, sometimes 5-6 times, and once 118 times in an effort to alleviate her emotional pain."  (Tr. 21.)

Upon careful review of the ALJ's decision, the parties' arguments and the records in this matter, the court is constrained to agree with Plaintiff.  The ALJ's decision includes the following summary of Plaintiff's mental health impairments:

> Turning to the medical evidence, the record reveals that the claimant has a remote [] history of hospitalization at an alcohol and drug addiction treatment center. Specifically, the claimant was admitted on February 17, 2011 for treatment of opioid use.  She was discharged on March 8, 2011 with diagnoses of opioid dependence, benzodiazepine dependence, and depression.  She was thought to have

maximally benefited from inpatient treatment and was cleared for discharge to home.  (Exhibit 1F, pages 3-4)

Records from Anderson/Oconee Behavioral Health dated May 2018 through November 2018 document her treatment for polysubstance abuse disorders, a major depressive disorder, a posttraumatic stress disorder with symptoms described as including depressed mood, anxiety, and post-traumatic stress disorder. (Exhibit 2F) A November 2018 discharge report indicates that the claimant had requested discharge and it was noted that she had completed services successfully.  It was noted that the claimant had gained tools for managing her anxiety and gleaned an understanding of how her anxiety led her to substance use. (Exhibit 2F, page 30)

The record indicates that the claimant returned to care at Oconee Mental Health in February 2019 and was seen as recently as March 20, 2020. (Exhibits 5F, 10F, 15F, and 18F)  The March 2020 progress note indicates that the claimant had diagnoses of a borderline personality disorder, an unspecified bipolar disorder, a generalized anxiety disorder and polysubstance abuse disorders, in early remission.   Her symptoms were reported as including decreased interest, energy and concentration. It was noted that she had started cutting herself again due to relationship issues. (Exhibit 18F, pages 1 and 4)

(Tr. 22.)   The ALJ does not mention or discuss anywhere in the decision either of the two hospitalizations in 2019.  It is possible that the ALJ may find that these were isolated events that would not impact the Plaintiff's residual functional capacity; however, the fact that Plaintiff was hospitalized twice within months of each other for a possible suicide attempt and suicidal ideation cannot go without mention for there to be a logical bridge to that conclusion.  See Monroe, 826 F.3d at 189 (stating that an ALJ must "build an accurate and logical bridge from the evidence to his conclusions").  Further, it is unclear if the ALJ considered the impact Plaintiff's cutting may have on her residual functional capacity.

Moreover, in discounting Plaintiff's subjective complaints, the ALJ appears to selectively reference the record, only relying on records indicating that Plaintiff was doing well.  Specifically, the ALJ mentions that (1) Plaintiff "was discharged from mental health care in November 2018 with information that she had completed services successfully.  (Exhibit 2F, page 30)"; (2) in April 2019 Dr. Brown indicated mostly normal findings (Exhibit 11F, page 25); and (3) in March 2020

Plaintiff's mental examination was well within normal limits (Exhibit 18 F, page 3).  (Tr. 23.)  The ALJ also questions Plaintiff's validity "given her history of legal/relationship issues including multiple DUI charges, a restriction from seeing her son because the father would not allow visitation; and charges related to her stealing opiates from her place of employment.  (Exhibits 2F, pages 2 F, pages 24 and 27)."  (Id.)  However, the ALJ does not appear to consider the records discussed above in assessing Plaintiff's subjective complaints.   Similarly, the ALJ cursorily rejected the state agency reviewer's opined limitations regarding social restrictions, despite contradictory evidence in the specific record that the ALJ relies upon as support for discounting the opined limitations.  (See Tr. 683-84) ("Positive for agitation, **hallucinations** and sleep disturbance."  "The patient is nervous/anxious and is hyperactive."  "Her speech rapid and/or pressured.  She is aggressive and hyperactive.").

Accordingly, the court cannot find that any error is harmless.  Therefore, remand is warranted to further consider and discuss Plaintiff's mental limitations.[2]  See Mascio, 780 F.3d at 636 (agreeing that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review") (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (alterations in original).

B.      Other Issues

Although Plaintiff seeks a reversal and remand for an award of benefits, the court finds that, contrary to Plaintiff's arguments, her entitlement to benefits is not wholly established and that this matter should be remanded for further consideration and assessment of the above-discussed

_____

[2] The court expresses no opinion as to whether further consideration of the evidence by the ALJ should necessarily lead to a finding that Plaintiff is ultimately entitled to benefits.  Further analysis and discussion may well not change the ALJ's conclusion on this point.

evidence by the Commissioner in the first instance.  See Crider v. Harris, 624 F.2d 15 (4th Cir. 1980) (finding remand for an award of benefits was warranted where the individual's entitlement to benefits was "wholly established" on the state of the record); Smith v. Astrue, No. 3:10-66-HMH-JRM, 2011 WL 846833, at *3 (D.S.C. Mar. 7, 2011) ("Whether to reverse and remand for an award of benefits or remand for a new hearing rests within the sound discretion of the district court.") (citing Edwards v. Bowen, 672 F. Supp. 230, 237 (E.D.N.C. 1987)); cf. Radford v. Colvin, 734 F.3d 288, 294-95 (4th Cir. 2013) ("Although we hold that the district court did not apply the wrong legal standard, we nonetheless vacate its judgment because it chose the wrong remedy: Rather than 'reversing' the ALJ and remanding with instructions to award benefits to Radford, the district court should have vacated and remanded with instructions for the ALJ to clarify why Radford did not satisfy Listing 1.04A.").

In light of the court's determination that this matter should be remanded for further consideration, the court need not address Plaintiff's remaining arguments, as they may be rendered moot on remand.  See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).  Moreover, if necessary, Plaintiff may present her remaining arguments concerning the ALJ's alleged errors on remand.

PJG Consent SSA (Rev  09/10/21)                                                                                                    Rebekah Rogers White

**ORDER**

☐    **Affirmed.   Plaintiff has failed to show that the Commissioner's decision was unsupported by substantial evidence or controlled by an error of law.**

☒    **Reversed and remanded pursuant to ☒ Sentence Four ☐ Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with this Order.**

☐    **Reversed and remanded for an award of benefits.**

**IT IS SO ORDERED.**

October 28, 2021                                    Paige J. Gossett
Columbia, South Carolina                    UNITED STATES MAGISTRATE JUDGE